**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 23-5009**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

ANIMAL LEGAL DEFENSE FUND, INC.,

Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, FOOD
SAFETY AND INSPECTION SERVICE, and THOMAS VILSACK,

Defendants-Appellees.

————————————

On Appeal from the United States District Court
for the District of Columbia

————————————

## BRIEF FOR APPELLEES
————————————

JANIE SIMMS HIPP
   *General Counsel*
   *U.S. Department of Agriculture*
   *Washington, DC 20250*

BRIAN M. BOYNTON
   *Principal Deputy Assistant*
     *Attorney General*

MATTHEW M. GRAVES
   *United States Attorney*

GERARD SINZDAK
GRAHAM W. WHITE
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7230*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-4052*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.    Parties and Amici

Plaintiff-Appellant is the Animal Legal Defense Fund, Inc.

Defendants-Appellees are Thomas J. Vilsack, Secretary, United States Department of Agriculture, the United States Department of Agriculture, and the United States Department of Agriculture Food Safety & Inspection Service.

No amici curiae participated in the district court.

## B.    Rulings Under Review

Plaintiff-Appellant seeks review of (1) the Memorandum Opinion entered on November 14, 2022, by the United States District Court for the District of Columbia (Nichols, J.), which is available at __ F. Supp. 3d __, 2022 WL 16921506; and (2) the Order entered on November 14, 2022, by the United States District Court for the District of Columbia (Nichols, J.).

## C.    Related Cases

This case has not previously been before this Court.  Undersigned counsel is unaware of any related cases within the meaning of the Circuit Rule 28(a)(1)(c).

*/s/ Graham W. White*
Graham W. White

# TABLE OF CONTENTS

**Page**

GLOSSARY

STATEMENT OF JURISDICTION..............................................................1

STATEMENT OF THE ISSUE ...................................................................1

PERTINENT STATUTES AND REGULATIONS ....................................1

STATEMENT OF THE CASE ...................................................................1

    A.    Statutory Background .............................................................1

    B.    Factual Background ................................................................2

    C.    Prior Proceedings..................................................................5

SUMMARY OF ARGUMENT ...................................................................8

STANDARD OF REVIEW.......................................................................10

ARGUMENT: ALDF LACKS STANDING TO CHALLENGE
             USDA'S ACTIONS ........................................................11

    A.    ALDF's allegation that Mastracco will be injured from
          possible future purchases of Perdue's Fresh Line
          products or hypothetical products from other
          companies is too speculative to confer standing..................12

    B.    Mastracco's disappointment in the accuracy of a
          cartoon depiction of chickens on a poultry product label
          is not a concrete injury.........................................................22

    C.    Mastracco's alleged future injury from relying on label
          representations she knows are deceptive is self-
          inflicted. ...............................................................................27

CONCLUSION ........................................................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                          **Page(s)**

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ........................................................... 12, 13

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d. Cir. 2020) .......................................................... 19, 20

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) ................................................................ 21

*Cato Inst. v. Securities & Exch. Comm'n*,
   4 F.4th 91 (D.C. Cir. 2021) .................................................................. 11

*Center for Auto Safety v. National Highway Traffic Safety Admin.*,
   793 F.2d 1322 (D.C. Cir. 1986) ............................................................ 25

*Center for Biological Diversity v. U.S. Dep't of Interior*,
   563 F.3d 466 (D.C. Cir. 2009) .............................................................. 16

*Chamber of Commerce of U.S. v. E.P.A.*,
   642 F.3d 192 (D.C. Cir. 2011)........................................... 12, 13, 15, 16

*Coalition for Mercury-Free Drugs v. Sebelius*,
   671 F.3d 1275 (D.C. Cir. 2012) ............................................................ 25

*Coca-Cola Prods. Mktg. & Sales Practices Litig., In re*,
   No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021) ................ 17,
                                                                                              18, 23, 24

*Consumer Fed'n of Am. v. FCC*,
   348 F.3d 1009 (D.C. Cir. 2003) ............................................................ 25

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .................................................... 16, 17, 19

*Dearth v. Holder*,
   641 F.3d 499 (D.C. Cir. 2011)..............................................................12

*Diamond v. Charles*,
   476 U.S. 54 (1986) ..............................................................................22

*Federal Election Comm'n v. Akins*,
   524 U.S. 11 (1998) ..............................................................................22

*Food & Water Watch, Inc. v. Vilsack*,
   808 F.3d 905 (D.C. Cir. 2015)..................................................22, 29, 30

*Fox v. Government of D.C.*,
   794 F.3d 25 (D.C. Cir. 2015) ..............................................................11

*Hesse v. Godiva Chocolatier, Inc.*,
   463 F. Supp. 3d 453 (S.D.N.Y. 2020) ..................................................20

*Information Handling Servs., Inc. v. Defense Automated Printing Servs.*,
   338 F.3d 1024 (D.C Cir. 2003) ............................................................10

*J.D. v. Azar*,
   925 F.3d 1291 (D.C. Cir. 2019) ..........................................................22

*Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liability Litig., In re*,
   903 F.3d 278 (3d. Cir. 2018) ................................................................21

*Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ..............................................................................12

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ......................................................................16, 21

*McNair v. Synapse Grp.*,
   672 F.3d 213 (3d Cir. 2012)................................................................21

*National Family Planning & Reprod. Health Ass'n v. Gonzales*,
    468 F.3d 826 (D.C. Cir. 2006)..................................................27, 28, 29

*National Fed'n of Fed. Emps. v. Cheney*,
    883 F.2d 1038 (D.C. Cir. 1989) ...........................................................27

*Orangeburg v. FERC*,
    862 F.3d 1071 (D.C. Cir. 2017) ...........................................................25

*Schlesinger v. Reservist Comm. to Stop the War*,
    418 U.S. 208 (1974) ...........................................................................27

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................8, 24, 25

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..............................................................22, 23, 24

*Trichell v. Midland Credit Mgmt., Inc.*,
    964 F.3d 990 (11th Cir. 2020) .............................................................22

*Turlock Irrigation Dist. v. Federal Energy Regulatory Comm'n*,
    786 F.3d 18 (D.C. Cir. 2015) .................................................................7

*United Transp. Union v. Interstate Commerce Comm'n*,
    891 F.2d 908 (D.C. Cir. 1989)........................................................12, 13

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ...........................................................................13

*Williams v. Reckitt Benckiser LLC*,
    65 F.4th 1243 (11th Cir. 2023)........................................................20, 21

**Statutes:**

21 U.S.C. § 457(c)....................................................................................1

21 U.S.C. § 457(d) ...................................................................................1

28 U.S.C. § 1291 .................................................................................... 1

28 U.S.C. § 1331 .................................................................................... 1

**Regulations:**

9 C.F.R. § 412.1 ..................................................................................... 2

9 C.F.R. § 412.1(d) ................................................................................ 2

**GLOSSARY**

ALDF       Animal Legal Defense Fund

FSIS        Food Safety and Inspection Service

PPIA        Poultry Products Inspection Act

USDA       U.S. Department of Agriculture

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. § 1331.  The district court entered final judgment on November 14, 2022, JA 110-33, and plaintiff timely appealed on January 12, 2023, Notice of Appeal, Dkt. 25.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court correctly held that plaintiff lacks associational standing because it failed to allege that one of its members suffered a cognizable injury.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory Background

The Poultry Products Inspection Act (PPIA) prohibits the sale of misleading poultry products.  21 U.S.C. § 457(c).  To that end, Congress empowered the Secretary of Agriculture to restrict the use of poultry product labeling that the Secretary "has reason to believe . . . is false or misleading."  *Id.* § 457(d).  U.S. Department of Agriculture (USDA)

1

regulations accordingly require all non-generic labels to be approved by the agency's Food Safety and Inspection Service (FSIS) before they "may be used on any product." 9 C.F.R. § 412.1. The FSIS requires the submission of labeling applications that include "sketch labels" that "clearly reflect and project the final version of the label." *Id.* § 412.1(d).

### B. Factual Background

1.    The Amended Complaint alleges the following facts: Perdue Farms (Perdue) is a poultry processing company that sells chicken and turkey products. JA 64-65, ¶¶ 56-57. Perdue markets some of its products as "organic" and "free-range," meaning that the chickens and turkeys comprising the products were raised outdoors. JA 65-66, ¶¶ 62-63. Perdue's "Fresh Line" products are not marketed as "organic" or "free-range" and are therefore made from chickens and turkeys "raised entirely indoors." JA 66, ¶ 64.

Between 2018 and 2020, FSIS approved sketch label applications for Perdue's Fresh Line chicken and turkey products. JA 66-73. Those products included "Chicken Thigh Filets," "Chicken Wings," "Chicken Thighs," "Whole Chicken and Chicken Parts Blanket," and "Turkey Wing Portions." JA 66, ¶ 65; JA 67, ¶ 70; JA 68, ¶ 77; JA 70-71, ¶¶ 86-

87; JA 73, ¶ 97.  Each sketch label application contained "nearly
identical" imagery of a "bucolic scene of chickens [or turkeys] on a
pasture outside of a barn, surrounded by verdant plants and sunshine,"
JA 67, ¶ 73; JA 69, ¶ 79:



JA 66.

      2.     Plaintiff Animal Legal Defense Fund (ALDF) is a
membership organization seeking to "educate consumers about—and
end—the intensive confinement of farmed chickens and turkeys."  JA
59, ¶ 26.  In January 2020, ALDF submitted "a package of information"

3

to FSIS, "explaining that label imagery like Perdue's, showing chickens and turkeys outside of a barn, under the sun, and surrounded by vegetation, for products that are not 'organic' and 'free range,' is misleading and contrary to how the animals were raised."  JA 71, ¶ 88. The package included a consumer survey commissioned by ALDF showing that "29% of respondents interpreted the chicken labels to mean that the chickens were given access to a barnyard/pasture and 19% of respondents interpreted the turkey label to mean the turkeys were given access to a barnyard/pasture."  JA 71, ¶ 89 (quotation marks omitted).

ALDF requested that FSIS "decline to approve any Perdue label applications that contain the same or similar imagery" because such label approvals "would allow highly misleading product claims into the market."  JA 71-72, ¶ 90.  FSIS rejected ALDF's request and allegedly indicated that it did not evaluate the imagery because graphic depictions on labels "are not considered labeling claims and do not make the product label false or misleading."  JA 72, ¶¶ 92-93.  ALDF understood this statement to mean that FSIS does not "evaluate the

graphic imagery that any poultry producer submits along with its application for approval of labels under the PPIA." JA 72, ¶ 94.

### C. Prior Proceedings

1. ALDF brought this action under the Administrative Procedure Act (APA) seeking declaratory and injunctive relief. ALDF challenges (i) FSIS's "2018, 2019, and 2020 decisions to approve" Perdue's Fresh Line product labels and (ii) FSIS's alleged "policy and practice of failing to review graphic matter when evaluating poultry product label applications under the PPIA." JA 74, 76.

The initial complaint alleged that FSIS's approvals directly injured ALDF as an organization. *See* JA 11-12, ¶¶ 24-27. Notwithstanding ALDF's allegation that the vast majority of consumers did not interpret the Perdue Fresh Line labels to mean that chickens and turkeys were "given access to a barnyard/pasture," JA 71, ¶ 89, ALDF alleged that FSIS's approvals forced it to divert substantial resources toward "uncovering, detecting, educating the public about, and bringing to FSIS's attention the discrepancy in the graphics on Perdue's Fresh Line labels and the ongoing harms suffered by the animals Perdue raises and uses in those products." JA 11, ¶ 25. The

5

government moved to dismiss the complaint, arguing, *inter alia*, that ALDF lacked organizational standing.  JA 28.

In response to the government's motion, ALDF filed an Amended Complaint alleging an additional injury to one of its members, Marie Mastracco.  JA 60-61.  The Amended Complaint alleges that "over the last several months," Mastracco "has regularly purchased Perdue's Fresh Line chicken breasts for her sick and elderly dog, Ozzie."  JA 60, ¶ 31.  According to the Amended Complaint, Mastracco considers various "factors" in deciding which chicken breasts to purchase.  *Id.*  In this instance, "Ms. Mastracco was influenced to purchase Perdue's Fresh Line chicken products by label claims about no antibiotics."  JA 60, ¶ 32.  The Amended Complaint further alleges that after "seeing the graphic imagery, coupled with Perdue's use of the term 'cage free,' Ms. Mastracco interpreted the label to mean that the chickens raised for the products roamed freely on pasture, under a shining sun."  *Id.*  She was "surprised" and "upset" to learn that the graphic depiction of the chickens did not reflect reality.  *Id.*

Mastracco allegedly "feels compelled to continue purchasing whole chicken breasts" given "her dog's health conditions."  JA 61, ¶ 34.

6

However, she "will continue to suffer a lack of confidence in whether *any* chicken labels convey accurate descriptions of the product's animal raising conditions" as long as FSIS "fails to review graphic images on meat labels." *Id.*

2. The government moved to dismiss the Amended Complaint and argued that ALDF lacked both organizational and associational standing. The district court agreed and granted the motion to dismiss. JA 110. The court held that ALDF failed to adequately allege organizational standing because ALDF failed to allege that the government's actions "impaired the organization's *ability* to provide services" or "inhibit[ed] ALDF's daily operations." JA 122-23 (quoting *Turlock Irrigation Dist. v. Federal Energy Regulatory Comm'n*, 786 F.3d 18, 24 (D.C. Cir. 2015)). Instead, ALDF merely alleged that the government "has taken steps inconsistent with ALDF's mission—which is insufficient for Article III standing." JA 123; *see also* JA 124-25 (similarly rejecting ALDF's arguments that the challenged conduct impeded "ALDF's legislative efforts aimed at ending the inhumane, large-scale confinement of birds" and precluded "ALDF from preventing

7

harms to animals through its regularly used process of submitting agency complaints" (quotation marks omitted)).

The district court further held that ALDF lacks associational standing because it failed to allege sufficient facts showing that Mastracco suffered a cognizable injury. JA 128-29. The court held that Mastracco's "disappointment that a cartoon depiction of chickens in the field does not match reality" is not a concrete injury sufficient to confer Article III standing. JA 129 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016)). It further held that because Mastracco "has been disabused altogether of any notion that the cartoon chickens represent reality," any further injury from purchasing the chicken products would be self-inflicted. JA 129-30.

## SUMMARY OF ARGUMENT

ALDF lacks standing to challenge FSIS's approval of Perdue's Fresh Line product labels and the agency's purported failure to consider graphic imagery in evaluating such labels. ALDF does not challenge the district court's conclusion that it lacks organizational standing. Rather, it challenges only the district court's conclusion that it lacks standing to bring suit on behalf of one of its members, Marie Mastracco.

8

The district court correctly rejected ALDF's associational standing argument, which fails for multiple, independent reasons.

ALDF lacks associational standing because the alleged future injury to Mastracco is entirely speculative. Plaintiff alleges that Mastracco was deceived by cartoon images on Perdue's Fresh Line chicken breast products depicting chickens roaming freely outdoors. She allegedly will be unable to trust whether similar images on chicken breast products from Perdue or its competitors are accurate when she purchases such products in the future. But the Amended Complaint fails to plausibly allege that Mastracco will purchase Perdue's Fresh Line chicken breasts again now that she knows the images are inaccurate. And it fails to allege that any other company sells chicken breast products containing similar imagery. Nor does the complaint plausibly allege that Mastracco will be misled when purchasing chicken in the future now that she knows that it is the label's text, not its cartoonish imagery, that indicates whether the poultry are raised outdoors. The prospect that Mastracco will suffer a lack of confidence when making future purchases is thus conjectural and does not give her

9

standing to seek declaratory or injunctive relief against FSIS's approval of Perdue's Fresh Line product labels.

Moreover, Mastracco's disappointment that cartoon depictions of chickens roaming outdoors did not match the reality of their raising conditions is not a concrete injury. The Amended Complaint alleges that she purchased Perdue's Fresh Line chicken breasts for her ailing dog because the product contained antibiotics. FSIS's alleged failure to review the images on the product label will thus inflict, at most, an informational injury unaccompanied by adverse effects. In any event, Mastracco's alleged injury is self-inflicted because she can avoid it by purchasing chicken products with written labeling claims about the chickens' raising conditions, which ALDF acknowledges are evaluated by FSIS for their veracity.

## STANDARD OF REVIEW

This Court reviews the district court's grant of a motion to dismiss for lack of standing de novo. *See Information Handling Servs., Inc. v. Defense Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C Cir. 2003).

10

**ARGUMENT**

**ALDF LACKS STANDING TO CHALLENGE USDA'S ACTIONS**

The district court correctly dismissed ALDF's complaint for lack of standing. ALDF does not challenge the district court's conclusion that it lacks standing as an organization to pursue its claims. That challenge is therefore waived. *See Fox v. Government of D.C.*, 794 F.3d 25, 29 (D.C. Cir. 2015) (arguments not raised in an opening brief are waived). On appeal, ALDF challenges only the district court's conclusion that it lacks standing to bring this suit on behalf of one of its members.

The district court correctly rejected ALDF's associational standing theory. As explained below, the injuries ALDF's member alleges are too speculative to support her standing, are not sufficiently concrete, and are, in any event, self-inflicted. For any and all these reasons, ALDF lacks associational standing, and its suit was properly dismissed.[1]

---

[1] In its Amended Complaint, ALDF seeks an injunction setting aside FSIS's approval of a wide range of Perdue products, not just the Fresh Line "chicken breast" product that Mastracco previously purchased. *See* JA 71-72. At a minimum, ALDF lacks standing to challenge FSIS's approval of products that the Amended Complaint fails to allege have been or will be purchased by Mastracco. *Cato Inst. v. Securities & Exch. Comm'n*, 4 F.4th 91, 94 (D.C. Cir. 2021) (plaintiff

*Continued on next page.*

11

**A.     ALDF's allegation that Mastracco will be injured from possible future purchases of Perdue's Fresh Line products or hypothetical products from other companies is too speculative to confer standing.**

1.     ALDF argues it has associational standing to bring this suit due to an alleged injury to one of its members, Marie Mastracco. Mastracco allegedly purchased one of Perdue's Fresh Line chicken products and was misled by the product label's cartoon depiction of chickens roaming on a farm.  But "[i]n a case of this sort, where the plaintiff[] seek[s] declaratory and injunctive relief, past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).  Rather, Mastracco "must show [s]he is suffering an ongoing injury or faces an immediate threat of injury." *Id.* (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

A plaintiff resting its claim for declaratory or injunctive relief on "predicted future injury . . . bears a 'more rigorous burden' to establish standing." *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015) (quoting *United Transp. Union v. Interstate Commerce Comm'n*, 891 F.2d 908,

───────────

bears the burden of establishing standing for each form of relief it seeks).

12

913 (D.C. Cir. 1989)). The threatened injury "must be certainly impending to constitute injury in fact." *Chamber of Commerce of U.S. v. E.P.A.*, 642 F.3d 192, 200 (D.C. Cir. 2011) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Allegations of "possible future injury" do not suffice. *Id.* (quoting *Whitmore*, 495 U.S. at 158). And in "considering any chain of allegations for standing purposes," courts "reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties)." *Arpaio*, 797 F.3d at 21 (quoting *United Transp. Union*, 891 F.2d at 912).

Plaintiff alleges that Mastracco "will suffer injury" because she will either "(1) purchas[e] Perdue chicken products that she currently understands to be raised inhumanely, against her consumer preferences, or (2) purchas[e] a different company's chicken product that she has no way of knowing was raised humanely." Br. 19. Both alleged future injuries rest on precisely the sort of conjecture that is insufficient to establish standing. *Chamber of Commerce*, 642 F.3d at 200.

Plaintiff's contention that Mastracco will suffer an injury from future purchases of Perdue's Fresh Line chicken products is entirely

speculative.  The Amended Complaint contains no allegations that

Mastracco will purchase Perdue's Fresh Line chicken products again.  It

alleges only that she "feels compelled to continue purchasing whole

chicken breasts," generally, given "her dog's health conditions."  JA 61,

¶ 34.  Indeed, Plaintiff admits that it would be "against her consumer

preferences" to purchase Perdue's Fresh Line chicken breasts in the

future.  Br. 19.  Mastracco, after all, is now aware that the chickens

comprising the product were not raised outdoors.  JA 60, ¶ 32.  The

Amended Complaint supplies no basis to believe that she would choose

to purchase a product she now knows does not conform with her

preferences.  And now that she is aware that the Perdue label's text

contains the relevant information regarding how the chickens she is

purchasing were raised, there is no plausible basis for concluding that

she will purchase a Perdue product that runs counter to her interests.

Plaintiff's allegation that Ms. Mastracco will suffer injury from

purchasing "a different company's chicken product" is even more

hypothetical.  Br. 19.  Plaintiff contends that Ms. Mastracco "has no

way of knowing whether any labels accurately depict the way the

chickens were raised."  Br. 20.  But the Amended Complaint

14

acknowledges that FSIS reviews written labeling claims, JA 54, ¶ 5, including claims like "[o]rganic" and "[f]ree [r]ange" indicating that chickens were raised outdoors.  JA 65, ¶ 62.  In other words, ALDF's Amended Complaint acknowledges that Mastracco has a clear "way of knowing" how a particular manufacturers' chickens were raised.  She can rely on the written label, which FSIS carefully reviews.

Moreover, the Amended Complaint fails to identify any non-Fresh Line product that could mislead Mastracco.  Nor does ALDF allege that such a product exists.  In fact, it acknowledges that the existence of such a product is hypothetical.  *See* Br. 21 ("Here, Perdue competitors who understand consumer demand for humanely raised chickens *may* have products on the market with labels that accurately depict chickens out on pasture[] . . . []and Mastracco would not know to choose those products because she no longer trusts any poultry product labeling." (emphasis added)).  Plaintiff's failure to allege the existence of such a product is fatal to its standing argument.  After all, "[w]hen the plaintiff is not himself the object of the government action or inaction he challenges" and alleges an injury that "hinges on actions taken by [third parties]," the plaintiff has "the burden of adducing facts showing that

15

those third-party choices have been or will be made in such manner as
to produce causation and permit redressability of injury." *Chamber of
Commerce*, 642 F.3d at 201 (cleaned up) (first quoting *Lujan v.
Defenders of Wildlife*, 504 U.S. 555, 562 (1992); and then quoting *Center
for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 477 (D.C.
Cir. 2009)).  Plaintiff has not alleged that any of Perdue's competitors
have introduced or will introduce a chicken product that could result in
an injury to Mastracco.  Her asserted injury is thus entirely speculative:
*If* such a product exists, *then* she may be harmed.  The conditionality of
Mastracco's alleged injury places this suit beyond the reach of federal
courts.

    2.    In arguing to the contrary, ALDF relies almost entirely on
the Ninth Circuit's decision in *Davidson v. Kimberly-Clark Corp.*, 889
F.3d 956 (9th Cir. 2018).  But *Davidson* is readily distinguishable.  In
*Davidson,* the Ninth Circuit held that "a previously deceived consumer
may have standing to seek an injunction against false advertising or
labeling" if they allege "an 'actual and imminent, not conjectural or
hypothetical' threat of future harm."  *Davidson*, 889 F.3d at 969.
Recognizing that the plaintiff's standing in that case was "a close

question," the court held that the plaintiff alleged an imminent future

injury through allegations of specific plans to purchase the same

product again, coupled with an inability on the plaintiff's part to

determine whether the company's unmodified label was accurate. *Id.* at

971-72.  Specifically, the plaintiff in *Davidson* alleged that a product

advertised as "flushable wipes" were not flushable and that

> [S]he continues to desire to purchase wipes that are suitable
> for disposal in a household toilet; would purchase truly
> flushable wipes manufactured by [defendant] if it were
> possible; regularly visits stores where [defendant's] flushable
> wipes are sold; and is continually presented with
> [defendant's] flushable wipes packaging but has no way of
> determining whether the representation flushable is in fact
> true.

*Id.* at 970-71 (ellipsis omitted) (quotation marks omitted).

The Ninth Circuit has since declined to extend *Davidson*'s holding

where, as here, the plaintiff fails to allege with certainty that they will

again purchase the allegedly deceptive product.  *See In re Coca-Cola*

*Prods. Mktg. & Sales Practices Litig.*, No. 20-15742, 2021 WL 3878654

(9th Cir. Aug. 31, 2021).  The plaintiffs in *Coca-Cola Prods.* alleged that

a beverage product misrepresented the absence of artificial flavors and

preservatives in the drink.  The plaintiffs submitted declarations that

they "would consider purchasing" the product again depending on

17

"several factors," such as future disclosures on Coca-Cola labels, whether other preservatives were added, and the beverage's price. *Id.* at *2 (quotation marks omitted). The Ninth Circuit held that its holding in *Davidson* did not apply because "declarations that [plaintiffs] would 'consider' purchasing properly labeled Coke are insufficient to show an actual or imminent threat of future harm." *Id.*

Plaintiff likewise fails to allege that Mastracco will purchase Perdue's Fresh Line chicken or a hypothetical product with similar labeling in the future with the certainty described in *Davidson*. Rather, like the plaintiffs in *Coca-Cola Prods.*, Mastracco alleges that her choice of which product to purchase turns on "factors" unrelated to the labeling claim she asserts is deceptive. *See* JA 60, ¶¶ 31-32 ("In deciding which chicken breasts to purchase, Ms. Mastracco considered factors such as whether the chickens raised for the meat were healthy, given any chemicals or hormones, and treated humanely. . . . Ms. Mastracco was influenced to purchase Perdue's Fresh Line chicken products by label claims about no antibiotics."). The Amended Complaint thus fails to allege with certainty that Plaintiff will seek out a poultry product based

on its claims about the treatment of the chicken comprising it, rendering her alleged future injury too speculative under *Davidson*.

And unlike the plaintiff in *Davidson*, Mastracco does not lack "a way of determining," *Davidson*, 889 F.3d at 972 (quotation marks omitted), whether the chicken she intends to purchase complies with her preferences regarding the manner in which the chickens were raised. She can simply read and rely on the written label. Thus, even assuming the Amended Complaint plausibly alleged that Mastracco intended to purchase Perdue Fresh Line chicken or a competing product with similar labeling in the future, she would not face the potential harm the Ninth Circuit deemed necessary to support the plaintiff's standing in *Davidson*. *See id.* at 972 (concluding that the plaintiff faced a "certainly impending" future injury where she had "no way of determining whether" a product complied with her consuming preferences, despite its label suggesting that it did).

Moreover, the district court's conclusion that Mastracco's alleged injuries are insufficient to confer standing is consistent with the decisions of other courts of appeals. As the Second Circuit explained, previously deceived consumers "are not likely to encounter future harm

19

of the kind that makes injunctive relief appropriate." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d. Cir. 2020) (reversing class certification due to plaintiffs' lack of standing to seek injunctive relief). Such consumers "are not bound to purchase a product again—meaning that once they become aware they have been deceived, that will often be the last time they will buy that item." *Id.* Instead, "past purchasers of a consumer product who claim to be deceived by that product's packaging[]. . .[]have, at most, alleged a past harm" that is "commonly redressable at law through the award of damages." *Id.*; *see also Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465 (S.D.N.Y. 2020) (Nathan, J.) (previously deceived consumers' allegations that they may purchase the challenged product again are "precisely the sort of allegations of possible future injury that are insufficient to create subject-matter jurisdiction").

The Eleventh Circuit reached the same conclusion in holding that prior purchasers of brain performance supplements lacked standing to seek injunctive relief against allegedly misleading claims on the products' labels. *See Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243 (11th Cir. 2023). The plaintiffs alleged that they "'would like to

20

purchase Defendants' products if they truly improved brain performance,' but are 'unable to rely on Defendants' representations regarding the effectiveness of Defendants' products in deciding whether to purchase Defendants' products in the future.'" *Id.* at 1254. The Eleventh Circuit held that these allegations failed to provide "any description of concrete plans" to purchase the products again, rendering the alleged future injury too speculative to confer standing. *Id.* (quoting *Lujan*, 504 U.S. at 564).

Precedent from the Third and Seventh Circuits is in accord. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liability Litig.*, 903 F.3d 278, 292 (3d. Cir. 2018) ("The premise that former customers could again be deceived by the very sort of advertising practices over which they were already pursuing equitable relief was a premise unmoored from reality."); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740-41 (7th Cir. 2014) ("Since [plaintiff] is now aware of [defendant's] sales practices, he is not likely to be harmed by the practices in the future."); *McNair v. Synapse Grp.*, 672 F.3d 213, 225 (3d Cir. 2012) (rejecting plaintiff's alleged future injury as "pure speculation").

21

**B.    Mastracco's disappointment in the accuracy of a
cartoon depiction of chickens on a poultry
product label is not a concrete injury.**

1.    Plaintiff lacks associational standing for the additional

reason that Mastracco's purported future injury is abstract.  To

demonstrate injury in fact, a plaintiff must have suffered an injury that

is "concrete."  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914

(D.C. Cir. 2015).  A "concrete injury is 'direct, real, and palpable—not

abstract.'"  *Id.*  An "asserted informational injury that causes no

adverse effects" does not suffice.  *TransUnion LLC v. Ramirez*, 141 S.

Ct. 2190, 2214 (2021) (quoting *Trichell v. Midland Credit Mgmt., Inc.*

964 F.3d 990, 1004 (11th Cir. 2020)).  Nor does an injury stemming

from a plaintiff's "desire to vindicate value interests" or "ideological

interests."  *J.D. v. Azar*, 925 F.3d 1291, 1318 (D.C. Cir. 2019) (per

curiam) (quoting *Diamond v. Charles*, 476 U.S. 54, 66 (1986)).  This

concreteness requirement ensures that courts "will not 'pass upon

abstract, intellectual problems,' but adjudicate 'concrete, living contests

between adversaries.'"  *Federal Election Comm'n v. Akins*, 524 U.S. 11,

20 (1998) (alterations omitted).

22

The district court correctly held that Mastracco's disappointment in the alleged inaccuracy of the cartoon depiction of chickens roaming in a field on Perdue's Fresh Line labels is not a concrete injury. The Amended Complaint alleges that she purchased chicken breasts for her ailing dog and chose Perdue's Fresh Line products because they did not contain antibiotics, not because she mistakenly believed the chickens were raised outdoors. *See* JA 60, ¶ 32 ("Ms. Mastracco was influenced to purchase Perdue's Fresh Line chicken products by label claims about no antibiotics."); JA 60, ¶ 32 (noting only that Mastracco was "surprised and upset" to learn that Fresh Line chickens are raised indoors). The Amended Complaint likewise does not allege that Mastracco intends to purchase outdoor-raised chicken products in the future. *See* JA 60-61, ¶¶ 32-34. Her allegation that she was deceived by the cartoon imagery is thus a purely informational injury unaccompanied by adverse effects, which is too abstract to confer standing. *TransUnion*, 141 S. Ct. at 2214; *Coca-Cola Prods.*, 2021 WL 3878654, at *2.

Plaintiff retorts (at 27 (quoting JA 60, ¶ 31)) that whether the chickens were "treated humanely" was among the factors Mastracco allegedly considered in deciding which product to purchase. But the

23

Amended Complaint does not allege that she purchased the product for this reason.  Nor does it allege that Mastracco suffered any adverse effects from the allegedly deceptive cartoon image.  Indeed, the allegation that she seeks to purchase chicken breasts suitable for her dog's health condition undermines Plaintiff's contention that she has or will suffer anything more than an informational injury.

Mastracco's alleged disappointment in the allegedly problematic cartoon drawings mirrors the injury asserted by two of the plaintiffs the Ninth Circuit found to lack standing in *Coca-Cola Products*.  *See Coca Cola Prods.*, 2021 WL 3878654, at *2.  The plaintiffs there alleged that a beverage product label containing the terms "no artificial flavors" and "no preservatives" was misleading given that phosphoric acid was among the ingredients.  Two of the plaintiffs submitted declarations stating that they "were not concerned with phosphoric acid, but rather with whether Coca-Cola was telling the truth on its product's labels." *Id.*  The Ninth Circuit held that the plaintiffs' "desire for Coca-Cola to truthfully label its products, without more, is insufficient to demonstrate that they have suffered any particularized adverse effects." *Id.* (citing *TransUnion*, 141 S. Ct. at 2214; *Spokeo, Inc. v. Robins*, 578

24

U.S. 330, 342 (2016)).  Mastracco's asserted concerns about Perdue's labeling practices are similarly abstract and deficient.

2.    There is no merit to Plaintiff's attempt to invoke this Court's holding that "the lost opportunity to purchase a desired product is a cognizable injury."  Br. 20 (alterations omitted) (quoting *Orangeburg v. FERC*, 862 F.3d 1071, 1078 (D.C. Cir. 2017)).  That line of cases allowed "consumers of a product to challenge agency action that *prevented* the consumers from purchasing a desired product."  *Orangeburg*, 862 F.3d at 1077-78 (emphasis added) (quoting *Coalition for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1281 (D.C. Cir. 2012)) (allowing South Carolina municipality to challenge a decision by FERC preventing it from buying wholesale power from a utility in North Carolina); *see, e.g.*, *Consumer Fed'n of Am. v. FCC*, 348 F.3d 1009 (D.C. Cir. 2003) (allowing consumers to challenge merger preventing them from buying Comcast internet); *Center for Auto Safety v. National Highway Traffic Safety Admin.*, 793 F.2d 1322, 1332 (D.C. Cir. 1986) (consumers can challenge National Highway Traffic Safety Administration fuel-efficiency standards that would reduce the availability of fuel-efficient trucks).

25

These cases are inapposite because Plaintiff does not allege that FSIS has prevented Mastracco from buying any product.

Plaintiff nonetheless argues that FSIS's alleged failure to evaluate label imagery might cause her to refrain from purchasing a product with images "that accurately depict chickens out on pasture" given her lack of confidence in the image's veracity.  Br. 21.  But the Amended Complaint does not allege that Mastracco desires to purchase such products or that her "lack of confidence" will affect her choice of which chicken breasts to purchase for her dog's health conditions.  JA 61.  Nor does it allege the existence of any other chicken products that contain labels with depictions of chickens roaming outdoors that Mastracco could be deterred from purchasing.  And, as noted, Mastracco now knows that a product's text contains accurate information on the manner in which a chicken was raised, rendering any lack of confidence regarding a package's imagery irrelevant to her purchase decisions.

3.    Plaintiff contends (at 23-24) that restricting standing here would prevent consumers from ever obtaining injunctive relief against a misleading poultry product label.  But it is axiomatic that "[t]he assumption that if respondents have no standing to sue, no one would

26

have standing, is not a reason to find standing." *National Fed'n of Fed. Emps. v. Cheney*, 883 F.2d 1038, 1051 (D.C. Cir. 1989) (quoting *Schlesinger v. Reservist Comm. to Stop the War*, 418 U.S. 208, 227 (1974)). In any event, the conclusion that Mastracco lacks standing in this case would not necessarily foreclose the possibility that a deceived consumer would have standing to seek injunctive relief under a different set of circumstances. As discussed above, ALDF fails to plausibly allege that Mastracco intends to purchase Fresh Line products in the future, or that, if she did buy such products in the future, she would have no way of knowing whether the product complied with her animal-raising preferences (and thus was likely to again be deceived). Those deficiencies provide a sufficient basis to affirm the dismissal of ALDF's complaint.

**C.    Mastracco's alleged future injury from relying on label representations she knows are deceptive is self-inflicted.**

Plaintiff lacks standing for the additional reason that Ms. Mastracco's alleged injury is self-inflicted. This Court has "consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing." *National Family Planning & Reprod. Health Ass'n v.*

27

*Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (collecting cases). Such an injury "does not amount to an 'injury' cognizable under Article III" and even if it did, "would not be fairly traceable to the defendant's challenged conduct." *Id.*

This Court's decision in *Gonzales* is illustrative. There, a plaintiff organization consisting of federal grant recipients challenged a statute "prohibiting recipients of federal grant funds from discriminating against individuals or entities that refuse to provide or refer for abortions." *Gonzales*, 468 F.3d at 827. The plaintiff alleged that its members faced "pervasive uncertainty" about how to comply with the statute, which purportedly conflicted with separate regulations from the Department of Health and Human Services. *Id.* at 828. This Court held that the plaintiff's "supposed dilemma" was self-inflicted because the plaintiff had "an easy means for alleviating the alleged uncertainty": it could seek clarification from the Department of Health and Human Services. *Id.* at 831.

The district court correctly held that any future injury suffered by Mastracco would likewise be self-inflicted. JA 129. The Amended Complaint alleges that Ms. Mastracco "faces the dilemma" of

28

purchasing Perdue Fresh Line chicken products or hypothetical chicken products from Perdue's competitors that she "has no way of knowing was raised humanely" because they contain allegedly unverified graphic representations.  Br. 19.  But Ms. Mastracco's purported dilemma is "largely of [her] own making," *Gonzales*, 468 F.3d at 831, given that she can easily alleviate her uncertainty by buying a product that does not make such graphic representations.  And even assuming Mastracco intends to seek out a chicken product that was raised humanely when making future purchases for her dog, she can avoid injury by purchasing a product containing *written* claims to that effect, which ALDF acknowledges are sold by Perdue and verified by FSIS.  *See, e.g.*, JA 65, ¶ 62 (alleging that Perdue chicken products marketed as "[o]rganic" or "[f]ree range" are produced from chickens with "access to the outdoors" and "the freedom to roam in open pastures").  Because the Amended Complaint's allegations make clear that Mastracco can purchase chicken products that satisfy her consumer preferences notwithstanding Defendants' alleged conduct, any injury flowing from the purchase of a product she cannot trust would be self-inflicted and thus insufficient under Article III.  *See Food & Water Watch*, 808 F.3d

29

at 922 (Henderson, J., concurring) (the plaintiffs' alleged harm from consuming poultry inspected by the New Poulty Inspection System is self-inflicted because "their declarations make clear[ that] they have the alternative of consuming non-[New Poultry Inspection System] poultry").

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

JANIE SIMMS HIPP
  *General Counsel*
  *U.S. Department of Agriculture*
  *Washington, DC 20250*

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*

MATTHEW M. GRAVES
  *United States Attorney*

GERARD SINZDAK

 */s/ Graham W. White*
GRAHAM W. WHITE
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7230*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-20530*
  *graham.white@usdoj.gov*

June 20, 2023

30

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,466 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Graham W. White*
Graham W. White

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*/s/ Graham W. White*
Graham W. White

**ADDENDUM**

# ADDENDUM TABLE OF CONTENTS

21 U.S.C. § 471……………………………………………………………A1

9 C.F.R. § 412.1……………………………………………………………A3

## 21 U.S.C. § 457. Labeling and container standards

(a) Requirements for shipping containers and immediate containers; nonconsumer packaged carcasses

All poultry products inspected at any official establishment under the authority of this chapter and found to be not adulterated, shall at the time they leave the establishment bear, in distinctly legible form, on their shipping containers and immediate containers as the Secretary may require, the information required under paragraph (h) of section 453 of this title. In addition, the Secretary whenever he determines such action is practicable and necessary for the protection of the public, may require nonconsumer packaged carcasses at the time they leave the establishment to bear directly thereon in distinctly legible form any information required under such paragraph (h).

(b) Labeling requirements; definitions and standards of identity or composition or articles and standards of fill of container; standards consistent with Federal Food, Drug, and Cosmetic Act; consistency between Federal and State standards

The Secretary, whenever he determines such action is necessary for the protection of the public, may prescribe: (1) the styles and sizes of type to be used with respect to material required to be incorporated in labeling to avoid false or misleading labeling in marking and labeling any articles or poultry subject to this chapter; (2) definitions and standards of identity or composition or articles subject to this chapter and standards of fill of container for such articles not inconsistent with any such standards established under the Federal Food, Drug, and Cosmetic Act, and there shall be consultation between the Secretary and the Secretary of Health and Human Services prior to the issuance of such standards under either Act relating to articles subject to this chapter to avoid inconsistency in such standards and possible impairment of the coordinated effective administration of this chapter and the Federal Food, Drug, and Cosmetic Act. There shall also be consultation between the Secretary and an appropriate advisory committee provided for in section 454 of this title, prior to the issuance of such standards under this chapter, to avoid, insofar as feasible, inconsistency between Federal and State standards.

(c) Use of trade names; false or misleading marking or labeling; misleading form or size of container

No article subject to this chapter shall be sold or offered for sale by any person in commerce, under any name or other marking or labeling which is false or misleading, or in any container of a misleading form or size, but established trade names and other marking and labeling and containers which are not false or misleading and which are approved by the Secretary are permitted.

(d) Withholding use of false or misleading mark, label, or container size or form; modification; hearing; conclusiveness of determination; appeal

If the Secretary has reason to believe that any marking or labeling or the size or form of any container in use or proposed for use with respect to any article subject to this chapter is false or misleading in any particular, he may direct that such use be withheld unless the marking, labeling, or container is modified in such manner as he may prescribe so that it will not be false or misleading. If the person using or proposing to use the marking, labeling, or container does not accept the determination of the Secretary, such person may request a hearing, but the use of the marking, labeling, or container shall, if the Secretary so directs, be withheld pending hearing and final determination by the Secretary. Any such determination by the Secretary shall be conclusive unless, within thirty days after receipt of notice of such final determination, the person adversely affected thereby appeals to the United States Court of Appeals for the circuit in which such person has its principal place of business or to the United States Court of Appeals for the District of Columbia Circuit. The provisions of section 194 of Title 7 shall be applicable to appeals taken under this section.

A2

**9 C.F.R. § 412.1(a)-(d). Label approval**

(a) No final label may be used on any product unless the label has been submitted for approval to the FSIS Labeling and Program Delivery Staff, accompanied by FSIS Form 7234–1, Application for Approval of Labels, Marking, and Devices, and approved by such staff, except for generically approved labels authorized for use in § 412.2. The management of the official establishment or establishment certified under a foreign inspection system, in accordance with parts 327 and 381, subpart T, must maintain a copy of all labels used, in accordance with parts 320 and 381, subpart Q, of this chapter. Such records must be made available to any duly authorized representative of the Secretary upon request.

(b) All labels required to be submitted for approval as set forth in paragraph (a) of this section will be submitted to the FSIS Labeling and Program Delivery Staff. A parent company for a corporation may submit only one label application for a product produced in other establishments that are owned by the corporation.

(c) The Food Safety and Inspection Service requires the submission of labeling applications for the following:

(1) Sketch labels as defined in paragraph (d) of this section for products which are produced under a religious exemption;

(2) [Reserved by 88 FR 2811]

(3) Special statements and claims as defined in paragraph (e) of this section and presented in the context of a final label.

(4) Requests for the temporary use of final labels as prescribed in paragraph (f) of this section.

(d) A "sketch" label is the concept of a label. It may be a printer's proof or equivalent that is sufficiently legible to clearly show all labeling features, size, and location. The Food Safety and Inspection Service will accept sketches that are hand drawn or computer generated, or other reasonable facsimiles that clearly reflect and project the final version of the label.

A3