# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 3, 2023          Decided August 9, 2024

No. 23-5009

ANIMAL LEGAL DEFENSE FUND, INC.,
APPELLANT

v.

THOMAS J. VILSACK, SECRETARY, UNITED STATES
DEPARTMENT OF AGRICULTURE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-01539)

———

*Daniel H. Waltz* argued the cause and filed the briefs for
appellant.

*Graham W. White*, Attorney, U.S. Department of Justice,
argued the cause for appellees.  With him on the brief were
*Brian M. Boynton*, Principal Deputy Assistant Attorney
General, and  *Gerard J. Sinzdak*, Attorney.

Before: SRINIVASAN, *Chief Judge*, PILLARD and KATSAS,
*Circuit Judges*.

2

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

Concurring opinion filed by *Circuit Judge* KATSAS.

SRINIVASAN, *Chief Judge*:    The Poultry Products Inspection Act authorizes the Department of Agriculture to prohibit the use of false or misleading labels on poultry products.    Certain product labels—including those bearing claims about the conditions in which animals are raised—must be approved by the Department before hitting grocery store shelves.

This case concerns the Department's approval of labels for Perdue's "Fresh Line" chicken and turkey products.    Although Fresh Line chickens and turkeys, according to allegations we accept as true, were raised strictly indoors, the approved product labels depict birds freely roaming outside a barn.    The Animal Legal Defense Fund asked the Department to reject any Perdue labels containing that kind of imagery.    ALDF claimed that the imagery misleads consumers into thinking the birds were raised in pastures, when they in fact spent the entirety of their lives in overcrowded warehouses.    The Department declined ALDF's request to disapprove the labels.

ALDF then sued, claiming that the Department violated the Poultry Products Inspection Act and the Administrative Procedure Act by approving the Fresh Line labels and by purportedly adopting a policy of evaluating only the text—not any graphics—on poultry-product labels.    The district court concluded that ALDF failed to establish standing to challenge the Department's actions.    We agree.

3

I.

A.

Congress enacted the Poultry Products Inspection Act (PPIA) to ensure that poultry products are "wholesome, not adulterated, and properly marked, labeled, and packaged." 21 U.S.C. § 451.  The PPIA makes it unlawful to sell poultry products with "false or misleading" labeling, *id*. §§ 453(h)(1), 457(c), 458(a)(2), and empowers the Department of Agriculture to prevent the "use" of "any marking or labeling" it "has reason to believe . . . is false or misleading in any particular," *id*. § 457(d).  The statute defines "labeling" to include any "written, printed, or graphic matter" on a product's "container[] or wrapper[]." *Id*. § 453(s).

The Department has delegated enforcement of the PPIA's labeling requirements to the Food Safety and Inspection Service (FSIS).  By regulation, FSIS must approve certain labels before a company can use them in the market.  9 C.F.R. § 412.1(a).  Among the labels requiring pre-market approval are those including "special statements and claims," a category encompassing "claims regarding the raising of animals." *Id*. § 412.1(c)(3), (e)(1)(iii).  To get such a label approved, a company must submit to FSIS an application that can include a "sketch" label—that is, a "concept of a label . . . that clearly reflect[s] and project[s] the final version of the label" that will appear on grocery shelves. *Id*. § 412.1(a), (d).

B.

Because the government "challenge[s] standing at the pleading stage without disputing the facts alleged in the complaint, 'we accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor.'" *In re U.S. Off. of Pers. Mgmt. Data*

4

*Sec. Breach Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019) (per curiam) (quoting *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015)).  Those allegations are as follows.

On several occasions in 2018 and 2019, Perdue submitted—and FSIS approved—sketch labels for Perdue's Fresh Line chicken and turkey products.  Each of those labels contained essentially identical graphics:  a cartoon depiction of chickens or turkeys outside a barn, beneath a full yellow sun, surrounded by corn and other plants.  On some labels—such as the one below, included in Perdue's application for Fresh Line chicken breasts—the birds appear to be pecking away amid the leafy vegetation, and the label advertises the chickens as having been "raised cage free."  *See* Am. Compl. 14 (J.A. 66).  FSIS approved all Fresh Line labels without mandating any changes to the graphics depicting birds roaming outside a barn.  *See id*. ¶¶ 71–72, 78, 97–98 (J.A. 67, 69, 73).



In January 2020, after FSIS had approved Fresh Line labels for both chicken and turkey products, the Animal Legal

5

Defense Fund (ALDF) asked FSIS to "decline to approve any Perdue label applications that contain the same or similar imagery." *Id*. ¶¶ 88–90 (J.A. 71). ALDF is a national animal advocacy organization, and its request to FSIS was part of its mission to combat the "animal cruelty" and "societal ills caused by factory farming." *Id*. ¶¶ 15–16 (J.A. 56). ALDF contended that the imagery on Fresh Line labels depicting birds outside is fundamentally "misleading and contrary to how the animals were raised." *Id*. ¶ 88 (J.A. 71). According to ALDF, the "bucolic scene" on the labels falsely suggests that the birds have "access to the outdoors," when they in reality spend the entirety of their "short lives" inside what amounts to a "crowded warehouse." *Id*. ¶¶ 63, 79 (J.A. 66, 69).

FSIS rejected ALDF's request. In a March 2020 letter, FSIS explained that the labels' imagery did not "violat[e]" FSIS's "labeling requirements" because the "photos, colors, and graphics used on packaging are not considered labeling claims and do not make the product label false or misleading." *Id*. ¶¶ 91–93 (J.A. 72). ALDF inferred from FSIS's letter that FSIS does not evaluate imagery depicting birds' living conditions on any label—from Perdue or any another company—as part of its pre-market review process. *See id.* ¶ 94 (J.A. 72). Later that year, Perdue submitted, and FSIS again approved, labels for more Fresh Line products, each of which bore essentially identical graphics to those ALDF had urged FSIS to find misleading.

## C.

In June 2021, ALDF sued the Secretary of Agriculture, the Department, and FSIS. ALDF asserts two claims. First, it alleges that FSIS's approvals of Perdue's Fresh Line labels violated the PPIA and the APA. Second, ALDF claims that FSIS has a "pattern and practice" of not reviewing the "graphic

6

matter or imagery" on poultry-product labels, including imagery that "show[s] animals in natural, outdoor settings," thereby again ostensibly violating the PPIA and APA. Am. Compl. ¶¶ 109–18 (J.A. 74–75). The complaint seeks declaratory and injunctive relief.

The government moved to dismiss both claims on the ground that ALDF lacks standing to pursue them. *Animal Legal Def. Fund v. Vilsack*, 640 F. Supp. 3d 134, 144 (D.D.C. 2022). The district court agreed, finding that ALDF lacks standing to sue on its own behalf (organizational standing) or on behalf of its members (associational standing). *Id*. at 144–51.

ALDF appeals only the district court's decision on associational standing. The court held that ALDF failed to demonstrate associational standing because the member whom ALDF asserts was injured—whose name is Marie Mastracco—does not herself have standing. *Id*. at 149–51. As the district court saw it, ALDF's amended complaint fails to show that Mastracco suffers a sufficiently concrete injury resulting from FSIS's alleged failure to review the graphics on Fresh Line (or any other) labels. *See id*. at 150–51. The court dismissed the complaint without prejudice.

## II.

We review the district court's decision on standing de novo. *Sierra Club v. Jewell*, 764 F.3d 1, 4 (D.C. Cir. 2014). A membership organization like ALDF has associational standing if "(1) at least one of its members would have standing to sue in [her] own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit." *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir.

7

2002).  Here, ALDF's allegations are plainly germane to its purpose:   one of the group's "signature focus areas" is "expos[ing] and reform[ing] factory farming" by "curbing the misleading labeling and advertising of animal products."  Am. Compl. ¶ 19 (J.A. 57).  And neither ALDF's claims nor the relief it seeks requires Mastracco's personal participation.  Our inquiry thus focuses on the first prong:  individual-member standing.

Mastracco would have standing to sue in her own right if she suffers (a) an injury-in-fact that is both (b) "fairly traceable to the challenged action of the defendant" and (c) "likely, as opposed to merely speculative," to be "redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000).  The parties dispute whether ALDF can demonstrate an injury-in-fact.  To do so, ALDF must show that the asserted injury to Mastracco is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Id.* at 180.

As the party invoking federal jurisdiction, ALDF bears the burden of establishing standing.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).  And because "standing is not dispensed in gross," ALDF "must demonstrate standing for each claim that [it] press[es] and for each form of relief that [it] seek[s]."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).   ALDF "may seek to make the requisite showing through affidavits from members," *Food & Water Watch v. FERC*, 28 F.4th 277, 283 (D.C. Cir. 2022), but the group has not offered an affidavit from Mastracco.  As a result, we rely on the facts asserted in ALDF's complaint.

A.

We start by summarizing ALDF's theory of standing and the facts alleged in support of it.  ALDF contends that

8

Mastracco was injured after purchasing Fresh Line chicken breasts and will continue to suffer cognizable injuries as long as FSIS permits misleading imagery to appear on Fresh Line and other poultry-product labels. Mastracco purchased Fresh Line chicken breasts after "relying" on the labels' "false and misleading . . . graphic imagery." Am. Compl. ¶ 30 (J.A. 60). Before discovering that those labels were, in her view, misleading, Mastracco had "regularly purchased" Fresh Line chicken breasts for her "sick and elderly dog." *Id.* ¶ 31 (J.A. 60). In deciding which chicken breasts to purchase, Mastracco "considered factors such as whether the chickens raised for the meat were healthy, given any chemicals or hormones, and treated humanely." *Id.* (J.A. 60). And she "relied on the products' labels to provide information about these [three] factors." *Id.* (J.A. 60). Mastracco "was influenced to purchase" Fresh Line products by the label's "claims about [containing] no antibiotics." *Id.* ¶ 32 (J.A. 60). And, "seeing the graphic imagery, coupled with Perdue's use of the term 'cage free,'" she "interpreted the label to mean that the chickens raised for the products roamed freely on pasture, under a shining sun." *Id.* (J.A. 60). When she "learn[ed]" that was not the case, she was "surprised and upset." *Id.* (J.A. 60). "FSIS's unlawful approvals" of the Fresh Line labels, claims ALDF, caused Mastracco to suffer "consumer harm." *Id.* ¶ 33 (J.A. 61).

That consumer harm is allegedly ongoing and imminent because Mastracco "feels compelled to continue purchasing whole chicken breasts" for her dog; but as long as FSIS continues allowing Fresh Line labels to remain on grocery shelves (claim 1) and maintains its purported policy of not vetting the imagery on poultry-product labels in its pre-market approval process (claim 2), Mastracco allegedly "will continue to suffer a lack of confidence in whether *any* chicken labels

9

convey accurate descriptions of the product's animal raising conditions." *Id*. ¶ 34 (J.A. 61).

The complaint contends that vacating FSIS's approvals of the Fresh Line labels (claim 1) would remedy Mastracco's "consumer injur[y]" because it "would remove" the labels from the grocery shelves, "eliminating the chance that" she "would continue to purchase chicken products [she] mistakenly believe[s] come from chickens raised in outdoor, bucolic conditions." *Id*. ¶ 35 (J.A. 61). And requiring FSIS to review graphic imagery on all poultry-product labels (claim 2) would remedy Mastracco's consumer injury by "allow[ing]" her "to purchase" chicken products "with greater confidence in knowing how the animals were raised." *Id*. ¶ 36 (J.A. 61).

B.

We now turn to assessing whether ALDF has standing to pursue its first claim, challenging FSIS's approval of Fresh Line labels. We hold that the harm Mastracco suffered when she purchased Fresh Line chicken breasts is sufficiently concrete and particularized, but ALDF fails to show that the harm is ongoing or substantially likely to recur.

1.

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). As a result, although ALDF alleges that FSIS has violated the PPIA, the group must still establish that the injury Mastracco suffers is sufficiently concrete to qualify as injury-in-fact. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. at 340. And the "concrete, *de facto*" injury must be a "legally cognizable" one. *See id.* at 341 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)).

10

ALDF "must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *TransUnion*, 594 U.S. at 431 (quoting *Lujan*, 504 U.S. at 561).  At this point in the proceedings, "[o]n review of a district court's dismissal of a complaint for lack of subject matter jurisdiction, . . . [w]e assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi,* 394 F.3d 970, 972 (D.C. Cir. 2005)).

Applying that standard, we conclude that ALDF's complaint sufficiently alleges facts showing that Mastracco suffered a concrete injury.  We read the complaint to allege that Mastracco's purchase of Fresh Line products was at least partially motivated by a desire to buy humanely raised chicken, and that the label's graphic depiction of the birds roaming outside was one reason she chose Fresh Line.  In its complaint, ALDF explains that when making purchasing decisions, Mastracco "considered . . . whether the chickens raised for the meat were healthy, given any chemicals or hormones, and treated humanely," and she "relied on the products' labels to provide information about" all those factors.  *See* Am. Compl. ¶ 31 (J.A. 60).  The complaint then goes on to say:  "Mastracco was influenced to purchase Perdue's Fresh Line chicken products by label claims about no antibiotics.  And seeing the graphic imagery, coupled with Perdue's use of the term 'cage free,' [she] interpreted the label to mean that the chickens raised for the products roamed freely on pasture, under a shining sun."  *Id*. ¶ 32 (J.A. 60).

We understand those sentences to describe Mastracco's pre-purchase decisionmaking process.  And we infer from the allegations that Mastracco made the decision to purchase Fresh

11

Line chicken at least in part because of the label's graphic representation of the birds' living conditions. As a result, ALDF adequately alleges that Mastracco sought to buy humanely raised chicken, that she chose Fresh Line in part because she thought the graphics represented that the chickens were humanely raised, and that the imagery on the package thus misled her into making a purchase. That monetary injury is sufficiently concrete and particularized for purposes of standing. *See TransUnion*, 594 U.S. at 425.

2.

While ALDF therefore has established that Mastracco was once harmed in a concrete and particularized way by FSIS's approval of Fresh Line labels, the complaint fails to show that the harm is ongoing or imminent.

Because ALDF seeks declaratory and injunctive relief—not damages—"past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). Rather, ALDF must show either that Mastracco is "suffering an ongoing injury" (actual) or that she "faces an immediate threat of injury" (imminent). *Id.* To show an imminent injury, she "must show a 'substantial probability of injury' or 'a substantial risk that the harm will occur.'" *Nat'l Ass'n of Broadcasters v. FCC*, 789 F.3d 165, 181 (D.C. Cir. 2015) (first quoting *Sierra Club v. Jewell*, 764 F.3d at 7; and then quoting *Susan B. Anthony List*, 573 U.S. at 158); *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10, 414 n.5 (2013). Importantly, the alleged future injury cannot be a "self-inflicted harm" or one "largely of [one's] own making"—neither of those "amount[s] to an 'injury' cognizable under Article III." *Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006).

12

ALDF fails to thread that needle. Our analysis of a plaintiff's standing "ordinarily depends on the facts as they exist when the complaint is filed." *Lujan*, 504 U.S. at 569 n.4 (emphasis omitted) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 830 (1989)). Here, the entire premise of the complaint is that Mastracco now knows that Fresh Line chicken, regardless of the imagery on the label, is raised indoors. And ALDF fails to explain why it is substantially likely that Mastracco will continue to purchase Fresh Line chicken—and rely on the label's graphics when doing so—now that she knows that "the chickens were raised in a way that "is anathema to her ethical views." ALDF Br. 19. Nor does ALDF explain why Mastracco's reliance on labels she knows to have been misleading could be something other than a self-inflicted injury.

In arguing that it has established a sufficiently imminent, non-self-inflicted injury, ALDF relies on *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). In *Davidson*, the Ninth Circuit held that there are certain circumstances in which "a previously deceived consumer may have standing to seek an injunction" based on future purchases of the same product "even though the consumer now knows or suspects that the advertising was false at the time of the original purchase." *Id.* at 969. The court reasoned in relevant part: "the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970. Here, ALDF contends that Mastracco will continue to purchase Fresh Line chicken even though, last she knew, the chickens were raised indoors and the labels' graphics are misleading. *See* Am. Compl. ¶ 35 (J.A. 61); *accord* ALDF Reply Br. 6.

13

Even if we assume for purposes of argument that a plaintiff could allege a cognizable injury in the way *Davidson* lays out, ALDF fails to do so. To fit within that theory, a previously deceived plaintiff would need to show that it is likely she will purchase the product in the future; that her purchase is once again motivated by the message conveyed by the product's label; and that it would be reasonable to assume the labeling has been cured of its defects. *See Davidson*, 889 F.3d at 969–70. But nowhere does ALDF explain why Mastracco would continue to rely on Fresh Line labels' graphics to purchase that product, or why it could be reasonable for her to do so. Instead, ALDF asserts that, because Mastracco cannot trust any chicken-product labels in the market, "there are *other reasons* why Mastracco may want to purchase Perdue Fresh Line products again, such as price, convenience, or availability at her local grocery store." ALDF Reply Br. 6 (emphasis added). It would not be enough for purposes of standing, though, if Mastracco were to purchase Fresh Line chicken for reasons other than that she reasonably interpreted the labels' graphics to mean that the product contains humanely raised chickens: if she were to buy Fresh Line because it was inexpensive, not because she wanted humanely raised chicken and believed the labels' imagery to so promise, she would not suffer the injury she complains of.

In sum, ALDF has not shown any substantial likelihood that Mastracco will suffer non-self-imposed future harm due to FSIS's approval of Fresh Line labels. Even if ALDF could do so pursuant to a different theory of injury, the group has not advanced one. ALDF thus fails to establish standing to pursue the first of its two claims.

14

C.

We also conclude that ALDF lacks standing to pursue its second claim, challenging FSIS's ostensible policy of declining to evaluate the graphics on any poultry-product labels. ALDF again stumbles on the actual-or-imminent prong of the injury-in-fact requirement.

1.

ALDF claims that Mastracco is injured by FSIS's alleged policy of not reviewing the imagery on poultry-product labels. ALDF's theory is that, while Mastracco is "compelled" to continue purchasing chicken breasts for her dog, she, as a result of FSIS's alleged policy, "suffer[s] a lack of confidence in whether *any* chicken labels" are accurate. Am. Compl. ¶ 34 (J.A. 61). That is, because of FSIS's ostensible policy, Mastracco cannot purchase chicken and "know[]" with "confidence . . . how the animals were raised." *See id.* ¶ 36 (J.A. 61).

The district court found that injury insufficiently concrete. *Animal Legal Def. Fund*, 640 F. Supp. 3d at 150–51. The court believed that the sole injury supported by the complaint's allegations is a psychic harm from disagreement with FSIS's alleged policy. *See id.* We, however, understand the complaint to allege more than just that narrow type of harm.

ALDF contends that FSIS's asserted failure to review graphics on poultry labels prevents her from acting in accord with her sincerely held ethical beliefs: Mastracco must continue buying chicken for her dog, but FSIS's allegedly unlawful policy prevents her from confidently making purchasing decisions that she believes are ethical. *See* Am. Compl. ¶¶ 34, 36 (J.A. 61). She thus desires information with which she can make an informed purchasing decision, and the

15

"information deficit" created by FSIS's policy "hinder[s] [her] ability" to do so. *TransUnion*, 594 U.S. at 442. That is the sort of "downstream consequence[]" that can establish Article III standing. *See id.* (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)).

Nor would relying on the graphics of non-Fresh Line products result in a self-inflicted injury. True, a premise of ALDF's complaint is that the graphics on all poultry-product labels are unreliable insofar as they are unreviewed by FSIS. But ALDF does not allege that Mastracco thus knows all such graphics are necessarily *inaccurate*, and there is no cause to so assume. For all she knows, companies other than Perdue might accurately portray birds' living conditions in graphics on product labels. She accordingly may reasonably believe some non-Fresh Line graphics are accurate, but she cannot know for sure because, according to ALDF, FSIS fails to review them as required. So, while Mastracco's future reliance on the *Fresh Line* labels she knows to be inaccurate would comprise a self-inflicted injury, *see supra* Section II.B.2, her reliance on *other* unreviewed—but potentially accurate—graphics would not.

The government, though, argues that Mastracco's reliance on such graphics would amount to a self-inflicted injury because she can disregard graphics and instead consult a label's written statements. We disagree. It might be reasonable in some circumstances to expect consumers to "grasp an easy means for alleviating [their] alleged uncertainty." *See Gonzales*, 468 F.3d at 831. *But see Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939–40 (9th Cir. 2008); *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 28–29 (D.C. Cir. 1990). Here, however, it is not evident that a label's written representations constitute an "easy means" for Mastracco to gain the information she desires. We do not know the extent to which poultry-product labels will contain written claims that speak to

16

Mastracco's ethical concerns (and potentially override any graphic-caused confusion) by addressing whether the birds were "humanely raised." A seemingly relevant written claim, moreover, would not necessarily clarify things for her. Indeed, the complaint indicates that the words "cage free" on Fresh Line labels *furthered* her misperception that the birds "roamed freely on pasture." Am. Compl. ¶ 32 (J.A. 60). So even assuming it might be reasonable to expect a consumer like Mastracco to turn away from graphic illustrations and look instead at written statements, we cannot say that her doing so would "alleviat[e] [her] alleged uncertainty" about the birds' living conditions. *Gonzales*, 468 F.3d at 831.

2.

While ALDF alleges a concrete injury, it fails to show that the injury is ongoing or imminent. For Mastracco to be injured by FSIS's failure to review the graphics on poultry-product labels, she must encounter labels that graphically represent birds' living conditions. And because, as we have explained, ALDF has not shown how Mastracco could be harmed again by the labels for Fresh Line chicken, the labels causing her future injury must be ones for competing products. But the complaint contains no allegation that Perdue or any competitor currently markets or will market any chicken product bearing graphics depicting chickens' living conditions. We then must accept the possibility that there are no such products. And because ALDF's failure to allege the existence of even a single non-Fresh Line product capable of harming Mastracco means that any prospective injury is necessarily hypothetical, we need not decide just how prevalent such non-Fresh Line products would have to be for Mastracco to face an imminent—that is, a substantially probable—injury. *See Sierra Club v. Jewell*, 764 F.3d at 7.

17

ALDF errs in contending that its complaint *does* allege the existence of non-Fresh Line products that graphically depict chickens' living conditions. ALDF focuses on its allegation that Mastracco "will continue to suffer a lack of confidence in whether *any* chicken labels convey accurate descriptions of the product's animal raising conditions." Am. Compl. ¶ 34 (J.A. 61). According to ALDF, "[t]he word 'any' includes both Perdue Fresh Line products and all other chicken products on the market." ALDF Reply Br. 6. We are unconvinced. That sentence of the complaint asserts only that if there are non-Fresh Line labels that graphically depict birds' living conditions, Mastracco would distrust them, just as she distrusts Fresh Line labels. The sentence does not allege that such non-Fresh Line labels actually exist in the first place.

ALDF also asserts that "a walk down the meat aisle at any grocery store shows that brands other than Perdue use imagery depicting chickens on their chicken breast labels." *Id*. at 7. That may be the case, but to matter, the imagery would need to make a representation about the birds' living conditions. And regardless, it is not enough for ALDF to contend as much in its briefing in our court: for purposes of establishing standing, we cannot "credit an assertion in a brief as if it were alleged in a pleading." *Arpaio v. Obama*, 797 F.3d at 21.

Based on the facts ALDF has pleaded in the complaint, we do not doubt that Mastracco will find herself in the meat section of her grocer because she needs to purchase chicken breasts for her dog. Nor do we doubt that she will seek out a humanely raised product and, if presented with a non-Fresh Line label that graphically depicts birds' living conditions, might rely on that imagery to inform her choice. But the complaint gives no reason to infer that such a label even exists. In that light, we cannot say it is possible—much less substantially likely—that

18

Mastracco will be injured by FSIS's ostensible policy.  ALDF thus fails to demonstrate standing for its second claim.

\*   \*   \*   \*   \*

For the foregoing reasons, we affirm the district court's dismissal without prejudice of ALDF's complaint.

*So ordered.*

KATSAS, *Circuit Judge*, concurring: The claims in this case target two different actions by the Department of Agriculture: (1) its approval of an allegedly misleading label for Perdue Fresh Line poultry products; and (2) its alleged policy of refusing to review graphics on the labels of all other poultry products. As the Court explains, the standing of the Animal Legal Defense Fund to raise these claims depends on the standing of its member Marie Mastracco. As to the first claim, her alleged injury to support prospective relief is self-inflicted; she knows that Fresh Line birds are not raised outdoors so, going forward, she cannot rely on any contrary suggestion from the label. As to the second claim, Mastracco's alleged injury is speculative; ALDF has not alleged that any poultry products besides Fresh Line contain graphic images making factual assertions about the birds' living conditions. On these points, the Court's analysis is spot-on.

I also agree that Mastracco's alleged injury for the second claim is concrete enough to support her Article III standing, though that strikes me as a close question. In my view, a plaintiff suffers no concrete injury from receiving misleading information that fails to mislead her. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1005 (11th Cir. 2020). From that premise, it would be a small step to conclude that a plaintiff likewise suffers no concrete injury from receiving unreliable information on which she does not rely. Nonetheless, I am ultimately persuaded by the Court's concreteness analysis. Mastracco alleges an entitlement to receive from the government certain information that it has failed to provide—a stamp of approval for graphic images that the government deems to be not misleading. And Mastracco further alleges that this information, if provided, would assist her in deciding which poultry products to buy for her dog. This seems enough to establish a concrete informational injury under *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441–42 (2021), and *Trichell*, 964 F.3d at 1004.

2

Nonetheless, I remain skeptical about the second claim even apart from Mastracco's failure to show imminence. First, if her alleged injury is an "information deficit" about how birds are treated, *see TransUnion*, 594 U.S. at 442; *ante* at 14–15, establishing redressability would require an alleged affirmative entitlement to receive this information, as opposed to just an entitlement to be free from any misleading information, *see* 21 U.S.C. § 457(c). And if there were no such affirmative entitlement, the claim would fail on the merits.

Second, it seems to me doubtful that cartoons like the one at issue, *see ante* at 4, make any representation about how birds are raised. But for standing purposes, what matters is how Mastracco reacts to these cartoons, and the complaint does allege that she understands them to make factual representations. In reviewing a jurisdictional dismissal based on asserted shortcomings in the complaint itself, we must assume the truth of that allegation. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). And we must assume that such cartoons are also misleading to reasonable viewers—a question that goes only to the merits.

Third, I think Mastracco's injury would be self-inflicted if she credited a cartoon over specific factual information on the label about how birds are raised. *See Nat'l Family Planning & Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006). But the governing statute does not require labels to include such information. *See* 21 U.S.C. §§ 453(h), 457. The complaint does not allege that sellers of poultry products routinely include it. Nor does the government seriously contend as much. For these reasons, I agree with the Court that we cannot, at this stage of the case, deem Mastracco's alleged injury to be self-inflicted. *Ante* at 15–16.

3

Fourth, ALDF seeks to challenge USDA's alleged pattern of not reviewing *any* graphic images on the packaging of *any* poultry products besides those sold under the Fresh Line brand. But the Administrative Procedure Act requires plaintiffs to focus their claims on "discrete" as opposed to "programmatic" agency actions. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891–94 (1990); *Am. Forest Res. Council v. United States*, 77 F.4th 787, 804–05 (D.C. Cir. 2023). Here, ALDF's pattern claim seems to fall on the programmatic side of that line. But the government did not raise this objection, which goes to the APA's non-jurisdictional requirement of reviewable "agency action" within the meaning of 5 U.S.C. § 704.

Because I do not regard these observations as inconsistent with the Court's opinion, I join it in full.